UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | | |
|---|---|---|
| LAURA JANE ROBINSON, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No. 1:25-cv-01524 |
| | ) | |
| EXIST X, INC., | ) | |
| | ) | |
| GALOIS, INC., | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ROBERT WILTBANK | ) | |
| | ) | |
| *Defendants*. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS**
**PARTIAL MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants ExistX, Inc., Galois, Inc., and Robert Wiltbank (collectively, "Defendants"),

by counsel, move to partially dismiss the claims in Plaintiff Laura Jane Robinson's ("Plaintiff")

Complaint (ECF No. 2), pursuant to Federal Rules of Civil Procedure Rule 12(b)(6). In support of

this motion, Defendants state the following:

**INTRODUCTION**

Plaintiff brings this action against Defendants, asserting a litany of claims related to her

employment with ExistX. Specifically, Plaintiff alleges retaliation, in violation of the False Claims

Act ("FCA"), 31 U.S.C. § 3730(h) (Count I); retaliation, in violation of the Virginia Whistleblower

Protection Act ("VWPA"), Va. Code § 40.1-27.3 (Count II); a violation of the Equal Pay Act

("EPA"), 29 U.S.C. § 206(d) (Count III); breach of contract (Count IV); defamation (Count V);

1

and wrongful termination, in violation of Virginia public policy (Count VI).[1]

Plaintiff's 328-paragraph Complaint is a textbook example of quantity over quality. Despite a myriad of allegations and conclusory narratives, Plaintiff's Complaint fails to meet the basic elements of the claims she attempts to raise.

For starters, Plaintiff's allegations under the EPA are woefully inadequate because Plaintiff fails to allege the fundamental and essential elements of that claim – namely that her employer, ExistX, paid higher wages to employees of the opposite sex who performed equal work under similar working conditions. Indeed, Plaintiff does not point to even a single comparator for her EPA claim, much less how her work compared to this hypothetical comparator. Plaintiff therefore fails to adequately allege a violation of the EPA, and the Court should dismiss Count III as to all Defendants.

Plaintiff also alleges a Virginia state law claim of wrongful termination in violation of public policy – i.e., a *Bowman* claim.[2] A *Bowman* claim requires that a Plaintiff show that she was terminated in violation of public policy embodied in a Virginia statute. However, as discussed further below, none of the laws to which Plaintiff points can support a *Bowman* claim as a matter of law. Thus, Plaintiff fails to adequately allege a *Bowman* claim, and the Court should likewise dismiss Count VI as to all Defendants.

Plaintiff's strategy of bringing every claim as to every defendant raises additional issues with respect to Defendant Wiltbank. For instance, as a matter of law, there is no individual liability under the FCA or the VWPA. Thus, Defendant Wiltbank, as an individual, is not a proper defendant for these claims. Plaintiff further appears to allege breach of contract against Defendant

---

[1] Plaintiff does not delineate which claims apply to which Defendants. As such, Defendants presume that all claims are brought against all Defendants.

[2] *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

Wiltbank, despite the fact that the alleged contract was between Plaintiff and ExistX. Because Defendant Wiltbank was not individually a party to the alleged contract, he is not a proper defendant for Plaintiff's breach of contract claim. Therefore, the Court should dismiss Count I, Count II, and Count IV as to Defendant Wiltbank, either because those claims do not support individual liability (Counts I and II), or because Defendant Wiltbank was not individually a party to the alleged contract (Count IV).

Accordingly, for the reasons discussed below, the Court should grant Defendants' motion to dismiss Count III and Count VI as to <u>all</u> defendants. The Court should further grant Defendants' motion to dismiss Count I, Count II, and Count IV as to Defendant Wiltbank specifically.

<h3 style="text-align:center"><b><u>FACTUAL BACKGROUND</u></b>[3]</h3>

As alleged in the Complaint, ExistX was created to provide practical technology solutions to government clients. (Compl. ¶ 40). On the other hand, Galois was ExistX's "research-focused sister company." (*Id.*).

On or about September 11, 2023, ExistX offered Plaintiff a position as ExistX's Chief Executive Officer (CEO). (Compl. ¶ 29); *see* **Exhibit A** (Offer Letter).[4] The offer letter stated that Plaintiff's compensation would consist of a $260,000 salary; "an annual incentive bonus target of

---

[3] Reference to any allegations in the Complaint is done solely for purposes of this Motion. Defendants expressly deny the material allegations in Plaintiff's Complaint and deny liability to Plaintiff under any theory whatsoever. Defendants reserve the right to challenge any other allegations if this Motion is denied.

[4] "While a 12(b)(6) motion focuses on the allegations of the complaint, it is well-established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was integral to the complaint and authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016). In her Complaint, Plaintiff makes several highly specific references to the terms of her offer letter (Compl. ¶¶ 30-37, 300-01, 303), but fails to include the letter as an attachment to her Complaint. Thus, Defendants provide the offer letter for the Court's consideration here. *See Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013) ("We must . . . consider documents incorporated into the complaint by reference." (quotation marks omitted)).

up to $50,000 in 2024 and $100,000 in 2025 and subsequent years"; and 700,000 shares of ExistX stock. (Compl. ¶ 30); *see* Exhibit A at 1. On September 12, 2023, Plaintiff signed the offer letter and began working for ExistX. (Compl. ¶ 33); *see* Exhibit A at 3. Mr. Wiltbank, in his capacity as ExistX's chairman, likewise signed the offer letter. (Compl. ¶ 34); *see* Exhibit A at 3.

In January 2025, Plaintiff was awarded a $30,000 bonus, which was $20,000 shy of the maximum bonus she could have received. (*Id.* ¶ 131). According to the Offer Letter, cited multiple times by Plaintiff in her Complaint, Plaintiff was eligible to receive "an annual incentive bonus target ***of up to*** $50,000 in 2024." Exhibit A at 1 (emphasis added).

According to the allegations in Plaintiff's Complaint, Plaintiff insisted that if ExistX submitted a proposal to the government that planned to utilize any technology owned by Galois, then ExistX was legally required to have a formal, executed IP licensing agreement with Galois.[5] (*Id.* ¶¶ 108, 141-48). Beginning in November 2023, based on her alleged belief that an IP licensing agreement was legally required, Plaintiff repeatedly attempted to secure such an agreement between ExistX and Galois, so that ExistX could use Galois-owned technology in ExistX's own projects. (*Id.* ¶¶ 149, 156-58, 160; *see* ¶¶ 168-219).

On March 31, 2025, ExistX's board terminated Plaintiff. (*Id.* ¶ 5, 219). Plaintiff alleges the board terminated her because of her attempts to ensure that ExistX remained compliant with legal requirements related to government contracting, and because of Plaintiff's concerns that ExistX's unlicensed use of Galois-owned property would violate the False Claims Act. (*Id.* ¶¶ 137-242).

---

[5] The vast majority of Plaintiff's allegations in her Complaint are her own conclusory summaries of the legal requirements that apply in the government contracting context, and ExistX's purported obligations under those legal requirements. To be clear, Defendant does not agree with Plaintiff's opinions of the law in a multitude of respects. Even on a motion to dismiss standard, the Court is likewise not required to accept as true Plaintiff's numerous legal conclusions, clothed as fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, a plaintiff must provide "more than labels and conclusions" and a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Instead, a claim has facial plausibility if the supporting facts demonstrate an "actual showing that [a plaintiff] is entitled to relief," thereby creating an inference that the defendant is liable under the law for the alleged misconduct. *Twombly*, 550 U.S. at 556. Ultimately, if the law does not permit recovery, or if a plaintiff does not allege enough facts to "nudge [his] claim[s] across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570. Notably, in determining whether a complaint passes Rule 12(b)(6) scrutiny, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

## ARGUMENT

**I.    Plaintiff's Equal Pay Act Claim (Count III) Should be Dismissed as to All Defendants Because Plaintiff Fails to Allege a Comparator of the Opposite Sex Who Received More Pay for Equal Work Under Similar Conditions**

Plaintiff alleges that Defendants violated the Equal Pay Act solely because Plaintiff received only $30,000 of a possible $50,000 bonus under the offer letter. (Compl. ¶ 300; *see id.* ¶¶ 30, 37, 131-32). Plaintiff alleges that she "met or exceeded all performance goals for [fiscal year] 2024 and was contractually entitled to a $50,000 bonus." (*Id.* ¶ 303). Plaintiff then summarily alleges the following: "The company's refusal to honor her performance bonus while treating male executives more favorably supports a prima facie case under the Equal Pay Act. Male executives within ExistX or Galois with similar responsibilities were not subject to arbitrary reinterpretation

of their compensation agreements." (*Id.* ¶ 302).

"To prove a violation of the [Equal Pay] Act, [the plaintiff] must make an initial (i.e., *prima facie*) showing of three elements: (1) the [employer] paid higher wages to an employee of the opposite sex who (2) performed equal work on jobs requiring equal skill, effort, and responsibility (3) under similar working conditions." *Spencer v. Virginia State Univ.*, 919 F.3d 199, 203 (4th Cir. 2019), *as amended* (Mar. 26, 2019). If a plaintiff satisfies this initial showing, then she is entitled to "an inference that a pay disparity was based on sex discrimination." *Id.* "Only once this inference exists does the burden shift to the employer to show that the pay differential was based on a factor other than sex." *Id.* Notably, "[e]quality under the [EPA] is a demanding threshold requirement." *Id.* The EPA "requires a comparator to have performed work 'virtually identical' (or the apparent synonym, "substantially equal") to the plaintiff's in skill, effort, and responsibility." *Id.* "Similarity of work is not enough." *Id.* at 204.

Here, Plaintiff falls far short of stating a plausible claim under the EPA. As demonstrated, an EPA claim – by its very nature – requires a showing that the plaintiff was paid less than another employee of the opposite sex who performed equal work. Plaintiff does not point to a single male individual that received a full $50,000 discretionary bonus, rather than $30,000, much less that this hypothetical male individual performed equal work under similar conditions. *See id.* at 203 (noting that the EPA "requires ***a comparator*** to have performed work '***virtually identical***' . . . to the plaintiff's in skill, effort, and responsibility" (emphasis added)). Perhaps recognizing that she had clearly failed to meet these basic elements, Plaintiff attempts to shoehorn in, on Paragraph 302 of her Complaint, an entirely conclusory allegation that ExistX "treat[ed] male executives more favorably" and that "[m]ale executives within ExistX or Galois with similar responsibilities were not subject to arbitrary reinterpretation of their compensation agreements." (Compl. ¶ 302). These

6

allegations are clearly insufficient and are instead reminiscent of the exact type of "unadorned, the-defendant-unlawfully-harmed-me accusation" that the Supreme Court has found insufficient to withstand a Rule 12(b)(6) motion to dismiss. *See Iqbal*, 556 U.S. at 678. Because Plaintiff fails to allege the basic requirements of an EPA claim, the Court should grant Defendants' motion to dismiss Count III of Plaintiff's Complaint as to <u>all</u> Defendants.

**II.   Plaintiff's *Bowman* Claim (Count VI) Should be Dismissed as to All Defendants Because the Statutes that Plaintiff Cites Cannot Support a *Bowman* Claim as a Matter of Law**

Plaintiff also alleges that she was wrongfully terminated, in violation of public policy – i.e., a *Bowman* claim. (Compl. ¶¶ 321-28). In *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985), the Supreme Court of Virginia recognized an exception to the state's employment at-will doctrine and created a cause of action for an employee whose termination violates Virginia public policy. *Rowan v. Tractor Supply Co.*, 263 Va. 209, 211 (2002). Since then, "[t]he Supreme Court of Virginia has recognized three situations in which a litigant may show her discharge violated public policy: (1) where an employer fired an employee for exercising a statutorily created right; (2) when the public policy is explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy; and (3) where the discharge was based on the employee's refusal to engage in a criminal act." *Carmack v. Virginia*, No. 1:18-CV-00031, 2019 WL 1510333, at *9 (W.D. Va. Apr. 5, 2019) (citing *Rowan*, 263 Va. at 214).

Thus, to adequately plead a *Bowman* claim, a plaintiff must, at a minimum, allege which public policies her termination purportedly violated. Here, Plaintiff alleges that the public policies implicated by her termination are found in: (1) the False Claims Act, (2) the Virginia Whistleblower Protection Act; (3) Title VII of the Civil Rights Act; and (4) The Virginia Human

Rights Act. (Compl. ¶ 323).

Plaintiff is wrong. Virginia courts have held numerous times that "a plaintiff seeking to state a *Bowman* claim must identify **a Virginia statute** that the employer-defendant violated by terminating the plaintiff." *Jones v. HCA*, 16 F. Supp. 3d 622, 636 (E.D. Va. 2014) (emphasis added); *see Lipford v. Eastman Chem. Co.*, No. 4:23CV00015, 2023 WL 7027970, at *3 (W.D. Va. Oct. 25, 2023) ("[A] *Bowman* claim cannot be premised on a federal statute."); *Carmack*, No. 1:18-CV-00031, 2019 WL 1510333, at *10 ("[I]t is clear in Virginia that plaintiffs cannot cite federal statutes as the source of a public policy exception to the at-will doctrine."). Thus, Plaintiff cannot rely on the False Claims Act or Title VII to support her *Bowman* claim.

Plaintiff's references to the VWPA and the VHRA do not save her. This Court has repeatedly refused to allow *Bowman* claims premised on the VWPA or the VHRA. Several decisions from this Court have recognized that *Bowman* claims are not viable when another statute creates a remedial structure. *See Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 553 (E.D. Va. 2022) ("Plaintiff cannot proceed with a *Bowman* claim because the VHRA provides its own remedial scheme and contemplates employees bringing a cause of action based on age and/or disability discrimination under the statute. Virginia courts have regularly held that when a statute creates a right and provides a remedy for the vindication of that right, **then that remedy is exclusive unless the statute says otherwise**." (emphasis added)); *Mirshahi v. Patient First Richmond Med. Grp., LLC*, No. 3:23CV495, 2024 WL 3823991, *8 (E.D. Va. Aug. 13, 2024) ("Because the VWPA creates a cause of action and provides its own remedy, it cannot support a common law *Bowman* claim."); *see id.* ("[N]umerous Virginia courts have found that statutes containing their own remedy cannot also support a *Bowman* claim." (quotation marks omitted)). Thus, Plaintiff likewise cannot rely on the VWPA or the VHRA to support her *Bowman* claim.

Because the public policies that Plaintiff references are clearly inadequate to support her *Bowman* claim as a matter of law, the Court should grant Defendants' motion to dismiss Count VI of Plaintiff's Complaint as to <u>all</u> Defendants.

**III.     Plaintiff's Claims Under the False Claims Act (Count I), the Virginia Whistleblower Protection Act (Count II), and for Breach of Contract (Count IV) Should be Dismissed as to Defendant Wiltbank Specifically**

In her Complaint, Plaintiff appears to allege all claims as to all Defendants. Because some of those claims do not state a claim as a matter of law with respect to Defendant Wiltbank, Defendants move to dismiss those claims here.

**a.     Plaintiff's Claims under the FCA and the VWPA Should be Dismissed as to Defendant Wiltbank Because Neither of those Statutes Support Individual Liability**

Plaintiff brings suit under the FCA's anti-retaliation policy in 31 U.S.C. § 3730(h). (Compl. ¶¶ 279-88). However, numerous courts have held that § 3730(h) does not impose liability on individuals. *See, e.g.*, *United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158, 1167 (8th Cir. 2019) ("[N]umerous courts . . . hold that the FCA does not create individual liability."); *Howell v. Town of Ball*, 827 F.3d 515, 529-30 (5th Cir. 2016) (holding that retaliatory termination under § 3730(h) does not apply to individuals); *Brach v. Conflict Kinetics Corp.*, No. 1:16-CV-978, 2017 WL 3267961, at *13 (E.D. Va. July 31, 2017) ("[T]he text of § 3730(h), read as a whole, forecloses the argument that a supervisor may be sued in his individual capacity."). Because the FCA does not impose individual liability as a matter of law, the Court should grant Defendants' motion to dismiss Count I of Plaintiff's Complaint as to Defendant Wiltbank.

The VWPA likewise does not support individual liability. Under the VWPA: "An ***employer*** shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take other retaliatory action regarding an employee's compensation, terms, conditions, location, or

privileges of employment, because the employee . . . reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official." Va. Code Ann. § 40.1-27.3(A)(1) (emphasis added); (*see* Compl. ¶¶ 289-97). "To bring a claim under the VWPA, a plaintiff must allege facts that demonstrate (1) [she] made a good faith report of a federal or state violation to a supervisor, (2) was discharged by [her] employer, and (3) [her] report was the 'but for' cause of her discharge." *Unger v. Carter*, No. 5:25-CV-00029, 2025 WL 2484198, at *13 (W.D. Va. Aug. 28, 2025) (quotation marks omitted).

The VWPA does not define the term "employer"; however, this Court and Virginia state courts have explained that the definition of "employer" in Va. Code Ann. § 40.1-2 applies to Va. Code Ann. § 40.1-27.3. *See Jordan v. Sch. Bd. of City of Norfolk*, 640 F. Supp. 3d 431, 451-52 (E.D. Va. 2022); *Moschetti v. Off. of the Inspector Gen.*, No. 3:22-CV-24–HEH, 2022 WL 3329926, at *10 (E.D. Va. Aug. 11, 2022); *see also Harris v. Washington & Lee Univ.*, 82 Va. App. 175, 193 (2024). In turn, Va. Code Ann. § 40.1-2 defines "employer" as "an individual, partnership, association, corporation, legal representative, receiver, trustee, or trustee in bankruptcy doing business in or operating within this Commonwealth *who employs another* to work for wages, salaries, or on commission and shall include any similar entity acting directly or indirectly in the interest of an employer in relation to an employee." Va. Code Ann. § 40.1-2 (emphasis added).

Here, although Plaintiff alleges that Defendant Wiltbank exercised some degree of control over Plaintiff while she worked at ExistX (Compl. ¶¶ 8, 89, 197, 244), he did not *employ* Plaintiff. Indeed, nowhere in Plaintiff's Complaint does she allege that Defendant Wiltbank—in his individual capacity—was Plaintiff's employer. To the contrary, Plaintiff is clear that ExistX was her employer. (*See* Compl. ¶ 5 ("Plaintiff is a woman over the age of 18, *who was employed as*

10

*the CEO of ExistX* from September 11, 2023, until her unlawful termination on March 31, 2025."

(emphasis added))).[6] Nor does the Plaintiff allege any facts which could lead this Court to conclude

that Defendant Wiltbank had an ownership interest in ExistX. Because the VWPA only permits

liability against "employers" and Defendant Wiltbank did not employ Plaintiff, her VWPA claim

against Defendant Wiltbank fails as a matter of law. *See Moschetti*, No. 3:22-CV-24–HEH, 2022

WL 3329926, at *10 (dismissing VWPA claim against an individual defendant because, although

the individual "supervised [the plaintiff] at [her employer], he did not *employ* her within the

meaning of the [VWPA]"). Accordingly, the Court should grant Defendants' motion to dismiss

Count II of Plaintiff's Complaint as to Defendant Wiltbank.

### b. Plaintiff's Claims for Breach of Contract Should be Dismissed as to Defendant Wiltbank Because He Was Not Personally a Party to that Contract.

In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable

obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation;

and (3) injury or damage to the plaintiff caused by the breach of obligation." *Shuler v. Partner JD*,

No. 3:15CVL70-HEH, 2015 WL 5020898, at *4 (E.D. Va. Aug. 20, 2015) (quoting *Filak v.

George*, 267 Va. 612, 619 (2004)). "[T]he plaintiff must allege facts setting forth the injury or

damage incurred *as a result of defendant's breach*." *Ramos v. Wells Fargo Bank, NA*, 289 Va.

321, 770 S.E.2d 491 (2015) (emphasis added). "The existence of a legally enforceable obligation

is a question of law, not fact." *Shuler*, No. 3:15CVL70-HEH, 2015 WL 5020898, at *4.

As described above, Plaintiff is clear that she was employed by ExistX. (Compl. ¶ 5).

Indeed, Plaintiff plainly alleges: "ExistX, Inc. tendered a formal offer of employment to Plaintiff."

---

[6] At times, Plaintiff appears to suggest that Galois and ExistX were joint employers. That said, Plaintiff's allegations are clear that she was employed as CEO by ExistX (Compl. ¶ 5), that ExistX offered her the position (*id.* ¶ 29), that the ExistX board terminated her (*id.* ¶ 219), and that Galois was a "sister company" (*id.* ¶ 7). To be clear, Plaintiff never alleges that Galois was her employer. Defendants are confident that discovery will further undercut any suggestions of joint employment.

(*Id.* ¶ 29). The offer letter itself likewise confirms that Mr. Wiltbank, as the chairman of ExistX, was extending an employment offer to Plaintiff *on behalf of ExistX*. Even assuming that the offer letter is a contract, which it is not, there is no sensible interpretation of the offer letter that would suggest that Mr. Wiltbank was personally a party to that letter or that he would be personally liable under it. For instance, the offer letter describes that certain portions of Plaintiff's compensation would be shares of ExistX stock. (Compl. ¶ 30); Ex. A at 1. It is nonsensical to believe that Mr. Wiltbank—as an individual—had a legal duty under the offer letter to provide shares of ExistX stock to Plaintiff or that he would be in breach if he did not *personally* provide said shares. Instead, even if such a breach of contract claim exists at all, the proper defendant for that claim would be ExistX, Plaintiff's actual employer, rather than Mr. Wiltbank.

Because Defendant Wiltbank was not a party to the alleged contract, he is not the proper defendant for this claim and Plaintiff fails to state a claim upon which relief can be granted. Accordingly, the Court should dismiss Count IV as to Defendant Wiltbank.

## CONCLUSION

WHEREFORE, ExistX, Inc., Galois, Inc., and Robert Wiltbank respectfully request that the Court grant Defendants' Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's Complaint and that the Court enter an Order: (i) dismissing with prejudice Plaintiff's Equal Pay Act claim (Count III) and wrongful termination under *Bowman* (Count VI) as to all Defendants; (ii) dismissing with prejudice Plaintiff's claims under the False Claims Act (Count I), the Virginia Whistleblower Protection Act (Count II), and for breach of contract (Count IV), as to Defendant Wiltbank specifically; and (iii) granting any such further relief as the Court deems proper.

Dated: November 5, 2025                    Respectfully submitted,
                                           **EXISTX., INC.,**

**GALOIS, INC.,** and
**ROBERT WILTBANK**

*/s/ Amy M. Pocklington*
Amy M. Pocklington (VA Bar No. 45233)
amy.pocklington@ogletreedeakins.com
Sebastian L. Brana (VA Bar No. 95703)
sebastian.brana@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC
901 East Byrd Street, Suite 1300
Richmond, VA  23219
Tel.: (804) 663-2330
Fax: (804) 225-8641

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 5th day of November, 2025, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send notification of same to counsel for Plaintiff:

Pamela Michelle Keith
pamkeith@centerforemploymentjustice.com
Ray Keith Gordineer, Jr.
raygordineer@centerforemploymentjustice.com
CENTER FOR EMPLOYMENT JUSTICE, LLC
650 Massachusetts Ave. NW, Suite 600
Washington, DC 20001
202-800-0292

Thomas J. Curcio (VSB #23016)
CURCIO LAW
700 North Fairfax Street, Suite 505
Alexandria, Virginia 22314
tcurcio@curciolaw.com
703-836-3366

*Counsel for Plaintiff*

                                                    /s/ *Amy Pocklington*
                                                    *Counsel for Defendants*