IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

| | |
|---|---|
| LAURA JANE ROBINSON, ) <br> ) <br> *Plaintiff*, ) <br> ) <br> v. ) <br> ) <br> EXIST X., INC., et al. ) <br> ) <br> *Defendants*. ) <br> ) | CIVIL ACTION <br><br> Case No. 1:25-cv-01524-RDA-LRV |

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S<br>PARTIAL MOTION TO DISMISS**

Plaintiff Laura Jane Robinson ("Plaintiff"), by and through undersigned counsel, hereby submits her opposition to Defendants' Partial Motion to Dismiss.

**INTRODUCTION**

This case concerns assertions by Plaintiff of violations under the False Claims Act, the Whistleblower Protection Act, Equal Pay Act, Breach of Contract, and other related Virginia statutory and common law, arising from a sustained course of retaliation and post-termination defamation by ExistX, Inc. ("ExistX"), Galois, Inc. ("Galois"), and Robert Wiltbank ("Wiltbank").[1] Defendants now move to dismiss certain claims at the pleadings stage. For purposes of this opposition, however, the Court must accept as true the well-pleaded facts in Plaintiff's Complaint and those summarized above. Thus, drawing all reasonable inferences in Plaintiff's favor. Those allegations—drawn from the Complaint and, where convenient to Defendants, from their own submissions—describe a highly credentialed CEO hired under a written compensation agreement, placed under overlapping and conflicted control by Galois and Wiltbank, tasked with personal responsibility for federal security and

---

[1] Plaintiff reasserts that she will move to amend her complaint to include claims under Title VII and the Virginia Human Rights Act and related retaliation claims once her administrative remedies are fully exhausted. These claims are currently dual filed with the Equal Employment Opportunity Commission and the Virginia Division of Human Rights.

1

compliance, who repeatedly raised FCA-related and whistleblower-protected concerns, was underpaid relative to her contractual bonus, was treated less favorably than male executives, and was ultimately wrongfully terminated and defamed after refusing to participate in conduct that would violate federal law.

## FACTUAL BACKGROUND

On or about September 11, 2023, ExistX extended Plaintiff a written offer of employment for the position of Chief Executive Officer. Comp. ¶ 29. Defendants attached that offer letter as an exhibit to their Memorandum in Support of the Partial Motion to Dismiss (Doc #23 or "Defs.' Mem.") and rely on it in their own factual statement. (Defs.' Mem. Ex. A or Doc #23-1("Offer Letter"). The Offer Letter provides, among other things: an annual base salary of $260,000; an "annual incentive bonus of $50,000 in 2024 and $100,000 in 2025 and for each year thereafter"; a grant of 700,000 shares of ExistX stock (representing 7% of the company), subject to milestones; and eligibility for a full suite of employee benefits. *See* Comp. ¶¶ 30–31; Defs.' Mem. Ex. A. Plaintiff alleges that the Offer Letter set forth final, binding terms of a valid employment contract, which she accepted and on which she relied when she began performing her duties. Comp. ¶¶ 30–37, 308–10. The letter also confirmed that Plaintiff would hold a voting seat on the ExistX board of directors while serving as CEO and required her to sign a Proprietary Information and Inventions Assignment Agreement as a condition of employment. *Id*. ¶¶ 31–32. Plaintiff signed the Offer Letter on September 12, 2023; Defendant Robert Wiltbank signed as well. *Id*. ¶¶ 33–34; Defs.' Mem. Ex. A.

Plaintiff served as ExistX's CEO and a member of its board of directors from September 2023 until her unlawful and retaliatory termination on March 31, 2025. Comp. ¶ 5. Following her termination, Plaintiff alleges that Wiltbank told ExistX and Galois personnel that she was "untrustworthy" and had mismanaged IP issues, and continued to make similar statements to others in

2

the federal contracting community, severely damaging her reputation and career prospects.[2] *Id*. ¶¶ 314–320.

Throughout Plaintiff's tenure she dealt with undue and discriminatory decisions over her hiring practices, her corporate leadership, and even her ability to understand the regulations she was required to follow, one of the main reasons she was hired in the first place. Comp. ¶¶ 9—31 75,118. Plaintiff also faced the extremely difficult task of having multiple executives in dual roles for both Galois and ExistX, making her day-to-day tasks difficult. Comp. ¶¶ 67, 96, 99, 117, 161. Plaintiff's well-pled Complaint asserts facts and details that fully support every count claimed against Defendants in this matter.

## **LEGAL STANDARD**

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). When reviewing such a motion, the Court must accept as true all well-pleaded factual allegations and draw all reasonable inferences in the plaintiff's favor. *See Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009); *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir.1999). A complaint survives when it alleges facts that, if accepted as true, state a facially plausible claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," sufficient to give the defendant fair notice of the claim and its grounds. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim survives a

---

[2] Defendants do not attempt to dismiss the allegation of defamation (Comp. Count V) in their Memorandum and only state that "Defendants' deny any liability for all claims in the complaint" *See* Defs.' Mem. pg. 3 footnote 3. A general denial of liability is not an argument in support of dismissal, and as such, Defendant concedes the justiciability of claims not specifically addressed in their Partial Motion to Dismiss.

motion to dismiss if it is "plausible on its face," meaning that the complaint contains enough factual matter, accepted as true, to suggest that the plaintiff is entitled to relief. *Twombly*, 550 U.S. at 570. The plausibility standard does not impose a probability requirement; rather, it merely asks for more than a sheer possibility that a defendant has acted unlawfully. *Iqbal*, 556 U.S. at 678.  Importantly, at this stage, the court's function is not to weigh the evidence, resolve factual disputes, or make credibility determinations. *SD3, LLC v. Black & Decker* (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015).  As shown herein, Plaintiff's allegations, taken as true and viewed under the appropriate standards of review, state plausible claims, which requires the Court to DENY Defendant's effort to dismiss in its entirety.

## ARGUMENT

### I.     Plaintiff's Equal Pay Act Claim is Adequately Plead

Defendants argue that Count III fails because Plaintiff has not identified by name "a single male individual" who received a full $50,000 bonus and performed "virtually identical" work. *See* Defs.' Mem. at 5. That argument misstates both the pleading standard under Rule 12(b)(6) and the elements of an Equal Pay Act claim at the motion-to-dismiss stage, which is why Defendants rely almost exclusively on a case decided at summary judgment—not at the pleading stage to prop up their argument.  Courts have consistently held that plaintiffs are not required to prove their claims at the motion to dismiss stage but must allege sufficient facts to allow the court to reasonably infer the elements of an EPA claim. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Reardon v. Herring*, 191 F. Supp. 3d 529, 547 (E.D. Va. 2016); *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017). *See also E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 256 (2d Cir. 2014); *Galligan v. Detroit Free Press*, 293 F. Supp. 3d 707, 713 (E.D. Mich. 2018). Thus, it is inappropriate to dismiss a claim under Rule 12(b)(6) for an Equal Pay Act (EPA) violation solely based on the lack of a specifically identified comparator in the original complaint. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *Reardon v. Herring*, 191 F. Supp. 3d 529, 547 (E.D. Va. 2016); *Robertson v. Virginia*

4

*State Univ.*, No. 3:23CV777 (DJN), 2024 WL 1774821, at *22 (E.D. Va. Apr. 24, 2024); *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017); *E.E.O.C. v. Port Auth. of New York & New Jersey*, 768 F.3d 247, 256 (2d Cir. 2014).

Under the Equal Pay Act, a plaintiff must plausibly allege three elements:

> (1) that her employer paid different wages to employees of opposite sexes;
>
> (2) that the employees hold jobs requiring equal skill, effort, and responsibility; and
>
> (3) that such jobs are performed under similar working conditions.

*U.S. Equal Emp. Opportunity Comm'n v. Maryland Ins. Admin.*, 879 F.3d 114, 120 (4th Cir. 2018). Plaintiff easily meets these pleading requirements with facts alleged in paragraphs 121, 126, 299, 302, and 324 of the Complaint. While the comparison to a male comparator is typically required after a well-developed discovery record, courts have emphasized that the test is one of substantial equality rather than identical job roles. *See Lovell v. BBNT Sols., LLC*, 295 F. Supp. 2d 611, 618 (E.D. Va. 2003).

### A. Rule 12(b)(6) Does Not Require a Prima Facie Case or Identification of a Particular Comparator by Name.

Under Rule 8(a), a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Swierkiewicz v. Sorema N.A.*, the Supreme Court held that "a plaintiff need not plead a prima facie case" to survive a motion to dismiss. 534 U.S. at 506. Contrary to Defendants' assertion, the *McDonnell Douglas* framework is "an evidentiary standard, not a pleading requirement." *Id*. The Court explained that Rule 8 does not require a plaintiff to plead facts establishing each element of a *prima facie* case at the outset, particularly where many supporting facts are in the employer's exclusive control. That is the exact scenario in this case. Plaintiff cannot be expected to have specific comparator information before discovery and a factual record is established before this Court.

The Fourth Circuit has reaffirmed this principle in *Woods v. City of Greensboro*, 855 F.3d 639,

5

647 (4th Cir. 2017) (citing *Swierkiewicz, supra, and* reiterating that "a plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss," and that the prima facie framework "is an evidentiary standard, not a pleading requirement."). What is required is that the complaint contains enough factual matter to make the claim plausible, not that it prove each element as if at summary judgment. *See also Robertson v. Virginia State Univ.*, No. 3:23CV777 (DJN), 2024 WL 1774821, at *22 (E.D. Va. Apr. 24, 2024) (denying a motion to dismiss at this pleading stage when some male comparators are alleged). *See also Leibowitz v. Cornell Univ.*, 445 F.3d 586, 593 (2d Cir. 2006) (holding with respect to the Equal Pay Act claim a prima facie case was not required to be plead at the pleading stage). *See also Alston v. United States*, 174 Fed. Cl. 177, 183 (2024) (showing the test to survive a motion to dismiss for failure to state a claim only requires satisfaction of a simple test: did she plausibly allege that she was paid less than a male counterpart).

Defendants' Equal Pay Act argument relies almost entirely on *Spencer v. Virginia State University*, 919 F.3d 199 (4th Cir. 2019). *Spencer* was decided on summary judgment, after extensive discovery and a developed factual record. The Fourth Circuit evaluated the plaintiff's evidence to determine whether she had proven that her comparator professors actually performed "virtually identical" work. *Spencer*, 919 F.3d at 202–04. The court's discussion of "demanding threshold requirements" and "virtually identical" comparators was directed to what a plaintiff must ultimately prove—not what she must plead on the face of the complaint. Here, Plaintiff's Complaint alleges far more than the "unadorned, the-defendant-unlawfully-harmed-me accusation" that *Iqbal* eschewed. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff specifically alleges that ExistX hired her as CEO pursuant to a written offer letter that promised an annual base salary of $260,000 and "eligibility for an annual performance-based incentive bonus of up to $50,000 in 2024 and $100,000 in 2025 and subsequent years," along with other components of compensation. Comp. ¶¶ 29-34 The Complaint asserts that "despite outperforming

6

every objective business metric," Plaintiff "met all performance goals and substantially increased ExistX's revenue and valuation." *Id*. ¶¶ 300—304.  Plaintiff alleges that in January 2025, after this successful year, Defendants unilaterally and without justification, reduced her bonus from $50,000 to $30,000. *Id*.  When Plaintiff raised her concerns about the reduction in her bonus, Wiltbank dismissed her contractual entitlement by telling her the agreement was "just an offer letter."  *Id*. at ¶¶ 132, 304. Importantly, Plaintiff specifically alleges that Defendants refused to honor her performance bonus, while treating male executives with similar responsibilities more favorably and paying them more. *See* Comp. at ¶¶ 121—126, 131—32, 299, 300—305, 324.  This is sufficient to assert a plausible claim because if Plaintiff is able to prove all of these allegations, she would be entitled to a remedy.

Taken together, these allegations describe (1) a specific component of pay (the annual performance bonus), (2) a concrete shortfall of $20,000 in that component, and (3) a plausible allegation that male executives performing similar responsibilities at the same companies were not subjected to the same unilateral reinterpretation of their compensation arrangements. At the pleading stage, these facts are more than enough to allege that Plaintiff was paid a lower *rate* for the bonus component of her compensation than male executives performing substantially equal work under similar conditions, which is exactly what the EPA prohibits. *See* 29 U.S.C. § 206(d)(1).

Moreover, Plaintiff alleges pervasive gender-biased conduct by Wiltbank that supports the inference that she, as a woman, was singled out for this adverse pay treatment.  See Comp. ¶¶ 120-126, 255-256, 299-304.  She pleads that despite her success in growing ExistX, Wiltbank repeatedly criticized her for hiring other women, and made remarks such as: "you know what happens when lots of women work together," (*see id*. at 119) warned that she was "hiring a lot of women," (*see id*. at 112) and asserted that clients would "not want to work with all women," while insisting that male Galois employees vet her female or technical hires. *See id*. at ¶¶ 118–121.

7

## II. Plaintiff's *Bowman* Claim (Count VI) States a Valid Claim and Should Not Be Dismissed

Under *Bowman v. State Bank of Keysville*, 331 S.E.2d 797 (1985), and *Rowan v. Tractor Supply Co.*, 559 S.E.2d 709, 711 (2002) Virginia recognizes three public-policy exceptions to the at-will employment doctrine which otherwise allows an employee to be fired for any reason: (1) if the employee is fired for exercising a statutorily created right, (2) where the termination of the employee violates a public policy that is explicitly expressed in a statute and the employee is within the class intended to be protected by that statute; or (3) if the employee is fired for refusing to engage in a criminal or unlawful act. *See Rowan v. Tractor Supply Co.*, 263 Va. 209, 214, 559 S.E.2d 709, 711 (2002). Plaintiff asserts that her termination fits into the latter two categories of exceptions to the at-will doctrine.

Defendants mischaracterize Count VI as an impermissible attempt to bootstrap federal and remedial statutes (the FCA, VWPA, Title VII, and VHRA) into a *Bowman* claim. That is not what the Complaint pleads, and it is not solely what Plaintiff relies on here. Properly understood, Count VI fits squarely within the second and third *Bowman* categories: termination for refusing to engage in conduct that violates clearly expressed Virginia public policy, as well termination for refusing to engage in criminal acts.

The Complaint alleges that, as CEO, Plaintiff repeatedly refused to participate in, authorize, or conceal proposals to the government that would misrepresent ExistX's intellectual property rights in Galois's SBIR-derived 5STARS technology. *See* Comp. ¶¶ 143—165, 168—190, 206. She consistently warned ExistX's board and Defendant Wiltbank that moving forward without a formal IP license would misstate ExistX's legal rights and expose the company to FCA and procurement liability. *Id.* at ¶¶ 281–285, 291–292, 324–325. Plaintiff convened an emergency board meeting on March 3, 2025 and circulated legal memoranda outlining these risks. *Id.* at ¶¶ 194—199, 283–284. Less than three weeks later, on March 31, 2025, she was terminated under pretextual rationales ("not a culture fit," "lack of trust," "differences on IP"), when the true reason, as alleged, was her refusal to

8

violate the law and her good-faith reporting of potential violations. *Id.* ¶¶ 273–278, 281–286, 325–327.

These allegations fit squarely into the *Bowman* exceptions to the at-will doctrine: Plaintiff refused to engage in misrepresentation in the context of public procurement and was fired for it. The Virginia statute expressing the relevant public policy is the Virginia Public Procurement Act ("VPPA"), Va. Code § 2.2-4300 et seq. The VPPA declares that all public procurement must be conducted "in a fair and impartial manner with avoidance of any impropriety or appearance of impropriety". Va. Code § 2.2-4300(C). Plaintiff's refusal to participate in proposals that would misstate ExistX's rights to SBIR-derived technology fits directly within that procurement-integrity policy. The decision to terminate her for that refusal therefore states a claim under *Bowman* category #2 and #3: discharge for refusing to violate a Virginia statute that expressly embodies public policy.

Defendants' argument that *Bowman* cannot rest on the VPPA because it was not cited by name in paragraph 323 of the Complaint elevates form over substance, and misreads both Virginia law and federal pleading standards. Paragraph 321 expressly incorporates all factual allegations into Count VI, and paragraphs 143-165, 168-190, 281-285, 291-292, and 324-326 lay out a detailed narrative of Plaintiff's procurement-related refusals and the causal link to her termination. Complaints "are meant to state facts, not citations of law." Courts applying Virginia law have therefore sustained *Bowman* claims even where the complaint did not identify the statute by number, so long as the facts pled implicated a specific Virginia public policy. *See, e.g., Altizer v. Town of Cedar Bluff, Va.*, No. 1:14CV00007, 2014 WL 2535057, at *7 (W.D. Va. June 5, 2014) (stating that "instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations."). The court rejected the motion to dismiss for this reason. *Id.*

The Supreme Court of Virginia itself focuses on whether a Virginia statute expresses the public policy at issue, not on whether the statute is named in the pleading or creates its own private cause of

action. In *Mitchem v. Counts*, 259 Va. 179, 523 S.E.2d 246 (2000), the Court held that a wrongful-discharge claim could proceed based on public policies of other statutes even though a separate statute (the then-operative VHRA) had a limited remedial scheme. The VPPA fits that model: it is a Virginia statute that squarely codifies the Commonwealth's policy of honesty and impartiality in public procurement, and it contains prohibitions on misrepresentation directly implicated by Plaintiff's allegations.

Defense contends that *Hice*, *Lipford*, *Carmack*, or *Mirshahi* dictate dismissal here. Those cases stand for two narrow propositions Plaintiff does not dispute: (1) federal statutes (such as the FCA or Title VII) cannot themselves serve as the source of Virginia public policy for a *Bowman* claim; and (2) when a Virginia statute both creates a right and provides a comprehensive remedial scheme for employees (such as the modern VHRA or VWPA), that statute generally cannot be used again as a springboard for a parallel *Bowman* claim. Plaintiff's *Bowman* theory respects both limitations. She does not contend that the FCA or Title VII alone supply the public policy; nor does she attempt to re-package VWPA or VHRA retaliation as a common-law tort. Instead, she grounds Count VI in the VPPA, which (a) is a Virginia statute, (b) expresses a distinct procurement-integrity policy that is not enforced by the FCA, VWPA, or VHRA, and (c) does not provide an employee-retaliation remedy for being fired for refusing to misrepresent material facts in public contracting. That is exactly the gap *Bowman* exists to fill.

Finally, even if the Court were to conclude that Count VI must explicitly name the VPPA or another Virginia statute to satisfy a *Bowman* claim, the appropriate remedy would be leave of the Court to amend, not dismissal with prejudice. Rule 15(a)(2) instructs that leave should be "freely" granted when justice so requires, *Foman v. Davis*, 371 U.S. 178 (1962) makes clear that amendment should be permitted absent undue delay, bad faith, prejudice, or futility. Here, the operative facts are already pled in detail. *See* Comp. ¶¶ 143-165, 168-190, 273-278, 279-286, 291-292, 321-326; amendment would simply add an express statutory citation, like the VPPA, that matches those facts.

10

There is no prejudice at this early stage.

Because Plaintiff plausibly alleges that Defendant terminated her for refusing to engage in conduct that would violate Virginia's clearly expressed procurement-integrity policy—and because no other claim in the Complaint vindicates that specific Virginia public policy—Count VI states a valid *Bowman* claim. The motion to dismiss Count VI should be denied; or at a minimum, Plaintiff should be granted leave to amend to expressly reference the VPPA.

### III.    Plaintiff's FCA, VWPA, and Contract Claims Are Properly Asserted Against Defendant Wiltbank

Defendants' attempt to carve Defendant Wiltbank out of Counts I, II, and IV rests on an unduly narrow view of the governing statutes and of the factual allegations pled in the Complaint. At the Rule 12(b)(6) stage, the Court must accept as true Plaintiff's detailed allegations that Wiltbank personally directed and executed the retaliatory scheme in response to her FCA-protected activity (Comp. ¶¶ 159-69, 174-81, 274-77, 281-84), exercised employer-level control over her terms and conditions of employment for VWPA purposes (*Id*. ¶¶ 7-8, 69-71, 88-91, 159-69), and then orchestrated the breach of the binding offer letter that governed her compensation which he himself had signed (*Id*. ¶¶ 29-37, 300-305, 306-313). Properly construed, the FCA does not clearly foreclose individual liability in these circumstances; the VWPA's broad "employer" definition permits liability where, as here, an individual effectively employs and retaliates against the plaintiff; and Virginia contract and veil-piercing principles allow contract claims to proceed against a dominant individual who uses a controlled entity to evade contractual obligations.

The Complaint specifically alleges that: 1) in recorded calls, Wiltbank dismissed statutory and contractual compliance obligations as "gray areas," (see Comp. ¶ 75); 2) criticized Plaintiff for being "overly legalistic," (*see id*.); and 3) encouraged "persuasive conversations with things that you don't own." *Id*. Furthermore, Wiltbank personally participated in the decision to cut Plaintiff's 2024 bonus

11

from $50,000 to $30,000 and delivered the shifting "organizational leadership" rationale for that reduction. *Id*. ¶¶ 131-33. As Chairman of ExistX's Board and CEO of Galois, he personally participated in and approved Plaintiff's March 31, 2025 termination. *Id*. ¶¶ 5-8, 219, 274-77. He directly participated in the governance, licensing, and compliance pressures that form the factual basis for Counts I and II. *Id*. ¶¶ 72-76, 94-115, 159-169, 174-181, 281-284. Accordingly, the FCA retaliation, VWPA, and breach of contract claims against Defendant Wiltbank should not be dismissed.

A.     **False Claims Act Retaliation – Defendant Wiltbank**

Defendants argue that 31 U.S.C. § 3730(h) does not permit individual liability and therefore Count I must be dismissed as to Wiltbank. But neither the statutory text nor controlling precedent in this Circuit forecloses individual liability, and the Complaint alleges direct, personal participation by Wiltbank in the retaliatory scheme.

After the 2009 amendments, § 3730(h) no longer uses the word "employer"; instead, it provides that "any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole" if subjected to retaliation. 31 U.S.C. § 3730(h)(1). The statute does not expressly limit the class of defendants to corporate employers. Courts have split on whether only entities may be liable; importantly, no Supreme Court or Fourth Circuit decision has held that individual liability is categorically barred.

Defendants rely on out-of-Circuit decisions such as *United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158 (8th Cir. 2019). That case may interpret § 3730(h) to exclude individual-capacity claims, but it is not binding here. Defense also relies on another non-binding case in *Howell v. Town of Ball*, 827 F.3d 515 (5th Cir. 2016), and misstates the holding in regards to retaliation under the FCA which does not appear to be mentioned at all. In fact the only binding ruling presented is *Brach v. Conflict Kinetics Corp.*, No. 1:16-cv-978, 2017 WL 3267961 (E.D. Va. July 31,

2017).³

Other courts, reading the amended statute and its remedial purpose differently, have allowed individual liability where the individual personally participates in the retaliation. *See U.S. ex rel. Head v. Kane Co.*, 798 F. Supp. 2d 186, 194 (D.D.C. 2011) (stating The FCA provides a civil penalty and treble damages against any individual who: (1) knowingly presents or causes to be presented a false or fraudulent claim for payment or approval by the United States; (2) knowingly makes, uses, or causes to be made or used, a false record or statement material to getting a false or fraudulent claim paid or approved by the Government; or (3) conspires to defraud the United States by getting a false or fraudulent claim allowed or paid. This suggests a supervisor can be sued in their individual capacity for violations of retaliation based on the reporting of the categorical claims. Lastly, and within this Circuit, at least one court has declined to dismiss individual-capacity FCA retaliation claims considering the amended statute's text and the absence of controlling authority to the contrary. *See Weihua Huang v. Rector & Visitors of Univ. of Virginia*, 896 F. Supp. 2d 524, 548 (W.D. Va. 2012) (noting that, post-amendment, the "universe of defendants" under § 3730(h) is not clearly confined to employers).

Against that legal backdrop, dismissal of Count I as to Wiltbank at Rule 12(b)(6) would be premature, especially given the Complaint's detailed allegations of his direct retaliation in response to Plaintiff's FCA-protected activity. *See* Comp. at ¶¶ 72-76, 116-117, 131-33, 159-60,163-66, 168-169, 281-284, 300-304. These allegations comfortably satisfy § 3730(h)'s elements as applied to Wiltbank: Plaintiff engaged in protected activity; Wiltbank knew; he personally took adverse actions (bonus reduction, termination, reputational attacks); and those actions were motivated by her attempts to prevent FCA violations.  Given the statutory ambiguity and the split in persuasive authority, the

---

³While this case is in the E.D.V.A, Defendant's reliance on text that they cite from *Brach v. Conflict Kinetics Corp.*, No. 1:16-CV-978, 2017 WL 3267961, at *13 (E.D. Va. July 31, 2017) does not appear to be from that case. In fact, the pin cites used by Defendant is a discussion on FLSA matters. Furthermore, the case cited by Defendant is at the summary judgment stage and not the motion to dismiss stage.

13

absence of controlling Fourth Circuit law, and the Complaint's robust allegations of direct, personal retaliation, the Court should deny the motion to dismiss Count I as to Defendant Wiltbank and allow the claim to proceed to discovery.

### B. VWPA Retaliation (Count II) – Defendant Wiltbank

Defendants also seek to dismiss Count II as to Wiltbank, arguing that the Virginia Whistleblower Protection Act ("VWPA"), Va. Code § 40.1-27.3, permits suit only against an "employer" and that Plaintiff has not alleged Wiltbank was her employer. Their argument both narrows the statutory text, and ignores the Complaint's joint-employment and control allegations—as well as the standard of review.

The VWPA prohibits an "employer" from retaliating against an "employee" for, among other things, making a good-faith report of a violation of federal or state law to a supervisor or public body. Va. Code § 40.1-27.3(A)(1). Courts have held that the definition of "employer" in Va. Code § 40.1-27 applies to the VWPA. *See Jordan v. Sch. Bd. of City of Norfolk*, 640 F. Supp. 3d 431, 451–52 (E.D. Va. 2022); *Moschetti v. Office of Inspector Gen.*, No. 3:22-cv-24, 2022 WL 3329926, at *10 (E.D. Va. Aug. 11, 2022); *Harris v. Washington & Lee Univ.*, 82 Va. App. 175, 193–96 (2024). That definition is broad: an "employer" includes any "individual, partnership, association, corporation, legal representative, receiver, trustee, or trustee in bankruptcy doing business in or operating within this Commonwealth who employs another to work for wages, salaries, or on commission and shall include any similar entity acting directly or indirectly in the interest of an employer in relation to an employee." Va. Code § 40.1-2 (emphasis added).

Defendants emphasize decisions like *Moschetti* to argue that an individual supervisor can never be an "employer" under the VWPA. But *Moschetti* held only that the particular individual state official in that case did not "employ" the plaintiff where the Commonwealth itself was immune and there was no plausible allegation that the official acted as her employer. 2022 WL 3329926, at *10. *Harris*

14

confirms that the definition of "employer" under § 40.1-2 encompasses anyone that falls within the statute's definition, which would include individuals or "any similar entity acting directly or indirectly in the interest of an employer in relation to an employee". 82 Va. App. at 193–96.

Here, the Complaint alleges far more than that Wiltbank was a distant supervisor. It alleges that: Galois owns ExistX and created it as a spin-out vehicle for its technologies, while keeping tight control over ExistX's board and operations. Comp. ¶¶ 7-8, 34-40, 69-71, 88-91. Wiltbank simultaneously served as CEO of Galois and chairman of the ExistX board, giving him "individual control over both entities" and effective authority over Plaintiff's budget, hiring, IP strategy, and ultimate employment status. *Id*. ¶¶ 5-8, 34, 57, 88-91, 117, 281-289. Plaintiff was repeatedly told, in substance, that she was "working for Galois-in-ExistX" and that her authority as CEO existed only so long as she deferred to Wiltbank and Galois. When she engaged in protected VWPA activity—raising and documenting violations of the FCA, SBIR, DFARS, FAR, OTA, and related procurement requirements—Wiltbank personally initiated, directed, and approved the retaliatory acts, including bonus reduction, governance marginalization, and termination. *Id.* ¶¶ 72-76, 94-115, 117-133, 159-69, 174-81, 215, 219, 274-77, 281-84.

Those allegations plausibly support the inference that Wiltbank "employ[ed]" Plaintiff or at least acted "directly or indirectly in the interest of an employer in relation to an employee" within the meaning of § 40.1-2, especially given his dual roles and decisive control over her compensation, working conditions, and termination. Whether he ultimately meets the statutory definition of "employer" is a mixed question of law and fact; it cannot be resolved against Plaintiff at the pleadings stage. *See Harris*, at 193–96 ("employer" analysis is context-specific and can encompass multiple employers).[4]

---

[4] In Footnote 6 of Defendants' brief asserts that Plaintiff "never alleges that Galois was her employer," points out that ExistX formally tendered the CEO offer, and predicts that discovery will "undercut any suggestions of joint employment." But the Complaint clearly pleads a joint-control and joint-employment structure throughout it and Defenses' suggestion that "discovery" will undercut this concept makes it clear that it is alleged in the complaint. *See* Comp.

### C. Breach of Contract (Count IV) – Defendant Wiltbank

Finally, Defendants contend that Count IV must be dismissed as to Wiltbank because he was not personally a party to Plaintiff's employment contract. Virginia law does not support dismissal on the pleadings where, as here, Plaintiff alleges both (i) personal participation by an individual in negotiating and breaching the contract, and (ii) facts supporting veil-piercing or alter-ego theories that could ultimately render that individual liable for the entity's contractual obligations.

Under Virginia law, a breach-of-contract claim requires: (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach. *Filak v. George*, 267 Va. 612, 619, 594 S.E.2d 610, 614 (2004) The Complaint alleges that: ExistX tendered a formal offer of employment on or about September 11, 2023, which set forth specific terms, including base salary, an annual performance-based bonus of up to $50,000 in 2024 and $100,000 in subsequent years, and 700,000 shares of ExistX stock subject to milestones. Comp. ¶¶ 29–30. Plaintiff accepted that offer and began performing as CEO; the offer letter "was also signed by the company's Chairman, Robert Wiltbank," and the Complaint alleges that it "constitutes a valid and binding employment contract." *Id.* ¶¶ 33–37, 306–309. Defendants breached that contract by, among other things, paying only a $30,000 bonus for 2024 despite Plaintiff "meet[ing] or exceed[ing] all performance goals" and by depriving her of equity and other benefits promised in the letter. *Id.* ¶¶ 116–17, 131–133, 300–305, 310–311.

Defendants assert that even if there was a contract, only ExistX can be liable because Wiltbank signed in a purely representative capacity. At this stage, that goes too far. Plaintiff alleges that Wiltbank personally negotiated, represented, and then undermined the core compensation terms; she further alleges that he used his control over both ExistX and Galois to cause and benefit from the breach. *Id.* ¶¶ 29-37, 116-117, 131-133, 159–169, 219, 300-305, 310-313.

16

Virginia recognizes the veil piercing doctrine that permits personal liability in such circumstances under an alter-ego veil piercing concept. The Supreme Court of Virginia has long held that the corporate veil may be pierced where there is such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist, and adherence to the corporate fiction would promote injustice or fraud. *See Cheatle v. Rudd's Swimming Pool Supply Co.*, 360 S.E.2d 828, 831 (1987); *C.F. Tr., Inc. v. First Flight L.P.*, 580 S.E.2d 806, 809 (2003); and *Dana v. 313 Freemason*, 587 S.E.2d 548, 552 (2003). The Courts have also said that piercing is appropriate where the corporation is used "to evade personal obligations, gain personal tax advantages, and failed to take responsibility for corporate activities". *O'Hazza v. Exec. Credit Corp.*, 431 S.E.2d 318, 320 (1993).

Here, Plaintiff alleges classic alter-ego facts, including that Wiltbank simultaneously served as CEO of Galois and Chairman of the ExistX board, exercising ultimate authority over both entities at all relevant times. Comp. ¶¶ 5–8, 219. Payroll, HR, financial, and legal functions for ExistX were effectively controlled by Galois personnel, with overlapping officers and counsel and little meaningful separation. *Id*. ¶¶ 41-49, 67-71, 88-102, 159-69, 219, 311. Board-level decisions regarding her compensation, equity, and termination were made by individuals serving dual roles in both entities, with Wiltbank at the center. *Id*. ¶¶ 5-8, 131-33, 215, 219, 300-05, 311. Wiltbank used this structure to deprive Plaintiff of her contractual compensation and equity for the benefit of Galois and himself, while shielding behind ExistX's formal corporate identity. *Id*. ¶¶ 7-8, 159-69, 274-77, 300-05, 310-13.

Taken as true, these allegations plausibly support a veil-piercing theory under Virginia case law. Allowing Defendant Wiltbank to be dismissed at this stage would violate the spirit of the law, particularly considering the allegations of his direct participation in the wrongful conduct. Whether Plaintiff can ultimately meet Virginia's demanding standard is a question for summary judgment or

trial, not a basis for Rule 12(b)(6) dismissal.

## CONCLUSION

For the foregoing reasons, the Court should DENY the motion in full. Alternatively, to the extent the Court finds any pleading deficiency, Plaintiff respectfully requests leave to amend the complaint pursuant to Rule 15 of the Federal Rule of Civil Procedure.

Respectfully submitted,

 /s/ Thomas J. Curcio
Thomas J. Curcio (VSB #23016)
CURCIO LAW
700 North Fairfax Street, Suite 505
Alexandria, Virginia 22314
Telephone: (703) 836-3366
Facsimile: (703) 836-3360
Email: tcurcio@curciolaw.com

Pamela M. Keith (Pro Hac Vice)
Raymond K. Gordineer Jr. (Pro Hac Vice)
CENTER FOR EMPLOYMENT JUSTICE
650 Massachusetts Ave. NW Suite 600
Washington, DC 20001
Tel: (202) 800-0292
Fax: (202) 807-5725
pamkeith@centerforemploymentjustice.com
raygordineer@centerforemploymentjustice.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

This is to certify that on this 3rd day of December 2025, a true copy of the foregoing Opposition to Defendant's Motion to Dismiss, and the Memorandum of Law in support thereof were served via electronic court filing on counsel of record:

Amy M. Pocklington (VA Bar No. 45233)
amy.pocklington@ogletreedeakins.com
Sebastian L. Brana (VA Bar No. 95703)
sebastian.brana@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC
901 East Byrd Street, Suite 1300
Richmond, VA 23219
Tel.: (804) 663-2330
Fax: (804) 225-8641
*Counsel for Defendants*

　　　　　　　　　　　　　　　　　　　　　　*/s/ Thomas J. Curcio*
　　　　　　　　　　　　　　　　　　　　　　*Counsel for Plaintiff*