**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**(Alexandria Division)**

| | | |
|---|---|---|
| **LAURA JANE ROBINSON,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 1:25-cv-01524-RDA-LRV** |
| | ) | |
| **EXIST X, INC., et al.** | ) | |
| | ) | |
| | ) | |
| **Defendants.** | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF ITS**
**PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants ExistX, Inc., Galois, Inc., and Robert Wiltbank (collectively, "Defendants"), by counsel, move to partially dismiss the claims in Plaintiff Laura Jane Robinson's ("Plaintiff") Amended Complaint (ECF No. 37), pursuant to Federal Rules of Civil Procedure Rule 12(b)(6). In support of this motion, Defendants state the following:

**INTRODUCTION**

Plaintiff brings this action against Defendants, asserting a litany of claims related to her employment with ExistX. Specifically, Plaintiff alleges retaliation, in violation of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h) (Count I); retaliation, in violation of the Virginia Whistleblower Protection Act ("VWPA"), Va. Code § 40.1-27.3 (Count II); a violation of the Equal Pay Act ("EPA"), 29 U.S.C. § 206(d) (Count III); breach of contract (Count IV); defamation (Count V); and wrongful termination, in violation of Virginia public policy (Count VI); sex discrimination, in violation of Title VII of the Civil Rights Act of 1964 (Count VII); retaliation, in violation of Title

1

VII (Count VIII); and hostile work environment, in violation of Title VII (Count IX).[1]  (Amend. Compl. (ECF No. 37)).

On November 5, 2025, Defendants filed a Partial Motion to Dismiss. (ECF Nos. 22, 23). On May 4, 2026, Plaintiff moved to amend her complaint to add what are now Counts VII through IX, after exhausting those claims with the Equal Employment Opportunity Commission. (ECF No. 29). In seeking to amend, Plaintiff also made a clear attempt to remedy the deficiencies identified in Defendants' Partial Motion to Dismiss. On June 2, 2026, this Court granted Plaintiff's Motion for Leave to Amend the Complaint and, in turn, denied Defendants' Partial Motion to Dismiss as moot. (ECF Nos. 36, 38).

In this single-plaintiff case, Plaintiff has now filed a 408-paragraph Amended Complaint, adding 70 paragraphs to her initial Complaint. Despite being permitted the opportunity to amend, Plaintiff's Amended Complaint still contains a myriad of conclusory narratives and fails to sufficiently plead the basic elements of some of the claims she attempts to raise.

For starters, Plaintiff's allegations under the EPA are inadequate because Plaintiff fails to allege the fundamental and essential elements of that claim – namely that her employer, ExistX, paid higher wages to employees of the opposite sex who performed equal work under similar working conditions. Though Plaintiff's Amended Complaint includes two purported comparators, Plaintiff's own allegations confirm that these individuals did not perform equal work under similar conditions. Plaintiff therefore fails to adequately allege a violation of the EPA, and the Court should dismiss Count III *with prejudice* as to <u>all</u> Defendants.

Plaintiff also alleges a Virginia state law claim of wrongful termination in violation of

---

[1] Plaintiff does not delineate which claims apply to which Defendants. As such, Defendants presume that all claims are brought against all Defendants.

public policy – i.e., a *Bowman* claim.[2] A *Bowman* claim requires that a Plaintiff show that she was terminated in violation of public policy embodied in a Virginia statute. However, as discussed further below, the single Virginia law Plaintiff identifies has never been held to support a *Bowman* claim and this Court's repeated cautioning against tacked on *Bowman* claims weighs heavily against Plaintiff's *Bowman* claim being viable here. Thus, Plaintiff fails to adequately allege a *Bowman* claim, and the Court should likewise dismiss Count VI *with prejudice* as to all Defendants.

Plaintiff's claim of defamation also fails as a matter of law. Under Virginia law, Plaintiff must plead enough facts to be able to prove that Defendants published a false factual statement that harmed Plaintiff or her reputation. However, none of the statements Plaintiff alleges in her Amended Complaint are provably true or false—instead, they are opinions concerning Plaintiff's ineffectiveness as a leader. As alleged, Defendants' statements are also entitled a qualified privilege because they were shared solely amongst Defendants. Because Plaintiff fails to meet the high bar of demonstrating a plausible claim for defamation, Count V should be dismissed as to all Defendants.

Plaintiff's strategy of bringing every claim as to every defendant raises additional issues with respect to Defendant Wiltbank. For instance, as a matter of law, there is no individual liability under the FCA, VWPA, or Title VII. Thus, Defendant Wiltbank, as an individual, is not a proper defendant for these claims. Plaintiff further appears to allege breach of contract against Defendant Wiltbank, despite the fact that the alleged contract was between Plaintiff and ExistX. Because Defendant Wiltbank was not individually a party to the alleged contract, he is not a proper defendant for Plaintiff's breach of contract claim. Therefore, the Court should dismiss Counts I,

---

[2] *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985).

II, IV, VII, VIII, and IX to Defendant Wiltbank specifically.

Accordingly, for the reasons discussed below, the Court should grant Defendants' motion to dismiss Count III, Count V, and Count VI as to <u>all</u> defendants. The Court should further grant Defendants' motion to dismiss Count I, Count II, and Count IV, Count VII, Count VIII, and Count IX as to Defendant Wiltbank specifically.

**FACTUAL BACKGROUND**[3]

As alleged in the Amended Complaint, ExistX was created to provide practical technology solutions to government clients. (Amend. Compl. ¶ 48). On the other hand, Galois was ExistX's "research-focused sister company." (*Id.*).

As is relevant here, on or about September 11, 2023, ExistX offered Plaintiff a position as ExistX's Chief Executive Officer (CEO). (*Id.* ¶ 34); *see* **Exhibit A**, ExistX Offer Letter.[4] The offer letter stated that Plaintiff's compensation would consist of a $260,000 salary; "an annual incentive bonus target of up to $50,000 in 2024 and $100,000 in 2025 and subsequent years"; and 700,000 shares of ExistX stock. (Amend. Compl. ¶ 35); *see* Exhibit A at 1. On September 12, 2023, Plaintiff signed the offer letter and began working for ExistX. (Amend. Compl. ¶ 38); *see* Exhibit A at 3. Mr. Wiltbank, in his capacity as ExistX's chairman, likewise signed the offer letter. (Amend.

---

[3] Reference to any allegations in the Amended Complaint is done solely for purposes of this Motion. Defendants expressly deny the material allegations in Plaintiff's Amended Complaint and deny liability to Plaintiff under any theory whatsoever. Defendants reserve the right to challenge any other allegations if this Motion is denied.

[4] "While a 12(b)(6) motion focuses on the allegations of the complaint, it is well-established that a document attached to a motion to dismiss may be considered when evaluating a motion to dismiss if the document was integral to the complaint and authentic." *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 164 (4th Cir. 2016). In her Amended Complaint, Plaintiff makes several highly specific references to the terms of her offer letter (Amend. Compl. ¶¶ 34-42, 342, 349, 351), but fails to include the letter as an attachment to her Amended Complaint. Thus, Defendants provide the offer letter for the Court's consideration here. *See Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013) ("We must . . . consider documents incorporated into the complaint by reference." (quotation marks omitted)).

Compl. ¶ 39); *see* Exhibit A at 3.

In January 2025, Plaintiff was awarded a $30,000 bonus, which was $20,000 shy of the maximum bonus she could have received. (Amend. Compl. ¶¶ 255, 258, 342). According to the Offer Letter, cited multiple times by Plaintiff in her Amended Complaint, Plaintiff was eligible to receive "an annual incentive bonus target of up to $50,000 in 2024." Exhibit A at 1.

According to the allegations in Plaintiff's Amended Complaint, Plaintiff insisted that if ExistX submitted a proposal to the government that planned to utilize any technology owned by Galois, then ExistX was legally required to have a formal, executed intellectual property (IP) licensing agreement with Galois.[5] (Amend. Compl. ¶¶ 166-87, 190-93). Beginning in November 2023, based on her alleged belief that an IP licensing agreement was legally required between ExistX and Galois, Plaintiff attempted to secure such an agreement between the two entities, so that ExistX could use Galois-owned technology in ExistX's own projects. (*Id.* ¶¶ 160, 166-202).

On March 31, 2025, ExistX's board terminated Plaintiff. (*Id.* ¶¶ 8, 197, 280-81, 331). Plaintiff alleges the board terminated her because of her attempts to ensure that ExistX remained compliant with legal requirements related to government contracting and because of Plaintiff's concerns that ExistX's unlicensed use of Galois-owned property would violate the False Claims Act. (*See id.* ¶¶ 149-202).

---

[5] The vast majority of Plaintiff's allegations in her Amended Complaint are her own conclusory summaries of the legal requirements that apply in the government contracting context, and ExistX's purported obligations under those legal requirements. To be clear, Defendants do not agree with Plaintiff's opinions of the law in a multitude of respects. Even on a motion to dismiss standard, the Court is likewise not required to accept as true Plaintiff's numerous legal conclusions, clothed as fact. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

**LEGAL STANDARD**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts that, when accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). For a claim to be plausible, a plaintiff must provide "more than labels and conclusions" and a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Instead, a claim has facial plausibility if the supporting facts demonstrate an "actual showing that [a plaintiff] is entitled to relief," thereby creating an inference that the defendant is liable under the law for the alleged misconduct. *Twombly*, 550 U.S. at 556. Ultimately, if the law does not permit recovery, or if a plaintiff does not allege enough facts to "nudge [his] claim[s] across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.* at 570. Notably, in determining whether a complaint passes Rule 12(b)(6) scrutiny, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

**ARGUMENT**

I.  **Plaintiff's Equal Pay Act Claim (Count III) Should be Dismissed as to All Defendants Because Plaintiff Fails to Allege a Comparator of the Opposite Sex Who Received More Pay for Equal Work Under Similar Conditions**

"To prove a violation of the [Equal Pay] Act, [the plaintiff] must make an initial (i.e., *prima facie*) showing of three elements: (1) the [employer] paid higher wages to an employee of the opposite sex who (2) performed equal work on jobs requiring equal skill, effort, and responsibility (3) under similar working conditions." *Spencer v. Virginia State Univ.*, 919 F.3d 199, 203 (4th Cir. 2019), *as amended* (Mar. 26, 2019). If a plaintiff satisfies this initial showing, then she is entitled to "an inference that a pay disparity was based on sex discrimination." *Id.* "Only once this inference exists does the burden shift to the employer to show that the pay differential was based on a factor

6

other than sex." *Id.* Notably, "[e]quality under the [EPA] is a demanding threshold requirement." *Id.* The EPA "requires a comparator to have performed work 'virtually identical' (or the apparent synonym, "substantially equal") to the plaintiff's in skill, effort, and responsibility." *Id.* "Similarity of work is not enough." *Id.* at 204.

Plaintiff alleges that Defendants violated the Equal Pay Act because Plaintiff received only $30,000 of a possible $50,000 bonus under the offer letter, "despite having met all performance goals and substantially increasing ExistX's revenue and valuation." (Amend. Compl. ¶ 341; *see id.* ¶¶ 335-46). Plaintiff also adds two purported comparators to support her EPA claim: Matt Bauer ("Mr. Bauer") and Ashwin Fisher ("Mr. Fisher"). (*Id.* at ¶¶ 336-46). Plaintiff alleges that Mr. Bauer and Mr. Fisher received higher pay than Plaintiff. (*Id.* at ¶¶ 102-03).

However, by Plaintiff's own allegations, Mr. Bauer and Mr. Fisher performed markedly different roles than Plaintiff. Plaintiff alleges that she was ExistX's CEO (*id.* ¶¶ 12, 42), and performed functions, including "executive leadership, fundraising, operations, and compliance accountability," as well as some of the responsibilities of a Chief Technology Officer ("CTO"), including "product-direction, licensing-structure, solution ideation, and technical strategy" (*id.* at ¶ 100). Meanwhile, Plaintiff alleges that Mr. Bauer was a "*fractional* Chief Technology Officer for ExistX while simultaneously employed as a full time Principal Scientist by Galois."[6] (*Id.* at ¶ 80; *see id.* ¶ 129). Plaintiff then alleges that Mr. Fisher was "a male CTO." (*Id.* at ¶ 103).

Plaintiff's own allegations show that she is comparing apples and oranges. Neither Mr. Bauer nor Mr. Fisher were CEOs. Instead, as alleged, Mr. Bauer was a fractional CTO for ExistX and a Principal Scientist for Galois, and Mr. Fisher was solely a CTO. As alleged, these are technical science-based roles that have nothing to do with Plaintiff's leadership and executive

---

[6] A "fractional" executive is, definitionally, an executive who performs executive functions in only a reduced capacity, often on a part-time basis.

functions as a CEO, and Mr. Bauer explicitly performed most of his work directly for Galois. Indeed, Plaintiff explicitly concedes that she did not perform equal work under similar conditions by consistently framing Mr. Bauer and Mr. Fisher as performing separate functions. (*See id.* ¶ 338 (describing Mr. Bauer as "occupying a narrower and subordinate role"); *id.* ¶ 339 (describing Mr. Fisher as performing a "narrower technical-executive role"). The underlying premise of the EPA is intended to avoid the same type of improper line drawing Plaintiff attempts here by summarily stating that her duties were—in her own view—qualitatively more important and deserving of pay than the distinct duties performed by Mr. Bauer and Mr. Fisher. *See Wheatley v. Wicomico Cnty., Maryland*, 390 F.3d 328, 333 (4th Cir. 2004) ("In enacting the EPA, Congress chose the word equal over the word comparable in order to show that the jobs involved should be virtually identical, that is very much alike or closely related to each other." (internal quotation marks and ellipsis omitted)).

The Fourth Circuit has found that identifying individuals with the "same title" was not necessarily sufficient to prove an EPA claim. *See id.* at 333-34; *see also Spencer*, 919 F.3d at 204 ("[A] plaintiff may not rely on broad generalizations at a high level of abstraction."). The Fourth Circuit also recently explained that pleading the "same title and general responsibility[ies]" is not enough. *Polak v. Virginia Dep't of Env't Quality*, 57 F.4th 426, 431 (4th Cir. 2023) ("[I]t is generally not enough to simply show that the comparator holds the same title and the same general responsibility as the plaintiff." (internal quotation marks, ellipsis, and brackets omitted)); *see Lee v. Belvac Prod. Mach., Inc.*, No. 20-1805, 2022 WL 4996507, at *1 (4th Cir. Oct. 4, 2022) (noting that a Plaintiff "must show that she and her comparators had virtually identical jobs, which requires ***more*** than a showing that they held the same title and the same general responsibilities." (internal quotation marks, bracket omitted, and emphasis added)). However, again, Plaintiff does

not even allege the same titles or responsibilities here, much less that she performed equal work under similar working conditions.

Plaintiff alleges that she held a different role and had significantly different responsibilities when compared to Mr. Bauer and Mr. Fisher, a pleading defect which is incurable. Thus, Plaintiff fails to allege a plausible EPA claim, and this Court should dismiss Count III of Plaintiff's Amended Complaint as to all Defendants.

## II. Plaintiff's Defamation Claim (Count V) Should be Dismissed as to All Defendants Because the Statements Plaintiff Identifies Are Opinions and Defendants are Entitled to Qualified Privilege

Plaintiff next alleges defamation under Virginia common law. (Amend. Compl. ¶¶ 354-62). In Virginia, "[t]he elements of defamation are (1) publication of (2) an actionable statement with (3) the requisite intent." *Tharpe v. Saunders*, 737 S.E.2d 890, 892 (Va. 2013) (internal quotation marks omitted). "To be actionable, the statement must be both false and defamatory." *Id.* (internal quotation marks omitted). "A false statement must have the requisite defamatory 'sting' to one's reputation." *Schaecher v. Bouffault*, 290 Va. 83, 92 (2015). A statement is considered actionable defamation if it "tends to injure one's reputation in the common estimation of mankind, to throw contumely, shame, or disgrace upon him, or which tends to hold him up to scorn, ridicule, or contempt, or which is calculated to render him infamous, odious, or ridiculous." *Id.* (internal quotation marks omitted).

"[L]anguage that is insulting, offensive, or otherwise inappropriate, but constitutes no more than 'rhetorical hyperbole' is not defamatory." *Id.* (internal quotation marks omitted); *Mann v. Heckler & Koch Def., Inc.*, 639 F. Supp. 2d 619, 634 (E.D. Va. 2009) (noting that "[a] plaintiff may not rely on minor or irrelevant inaccuracies . . . to state a claim" (internal quotation marks omitted)), *aff'd*, 630 F.3d 338 (4th Cir. 2010). "Whether a statement is actionable is a matter of

law to be determined by the court." *See Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993); *Andrews v. Virginia Union Univ.*, No. 3:07CV447, 2008 WL 2096964 (E.D. Va. May 16, 2008) ("Whether a statement is one of actionable fact or is one of not actionable opinion is a matter of law to be determined by the court.").

Notably, Virginia courts strictly scrutinize claims for defamation out of a recognition that individuals generally have a right to freedom of speech under both the United States and Virginia Constitutions. *See id.* ("Causes of action for defamation have their basis in state common law but are subject to principles of freedom of speech arising under the First Amendment to the United States Constitution and Article I, Section 12 of the Constitution of Virginia."); *Patel v. Cable News Network, Inc.*, 83 Va. App. 387, 406 (2025) ("[T]he right to seek legal redress for another's defamatory statements is constrained by the protections of free speech established in the First Amendment to the United States Constitution and Article I, Section 12 of the Constitution of Virginia.").

In support of her claim for defamation, Plaintiff asserts that Defendant Wiltbank stated to others that "Plaintiff was 'grabby' and 'overreaching' with respect to IP"; that Plaintiff "royally fucked up the response to 5STARS"; and, in reference to Defendants, "I don't think we broke the law a single time with respect to 5STARS." (Amend. Compl. ¶ 356). Plaintiff summarizes that Defendants defamed her because of "[s]tatements suggesting that Plaintiff mishandled intellectual property, acted without integrity, or lacked trustworthiness." (*Id.* ¶ 310). Plaintiff then summarily alleges that her "professional reputation was materially damaged" (*id.* ¶ 311), forcing her to "pursue self-employment in lieu of continuing along her established executive career path" (*id.* ¶ 312).

The problem for Plaintiff is that all the statements she identifies are statements expressing

an opinion, meaning they are not provably true or false. Defendant Wiltbank's alleged descriptions of Plaintiff as "grabby" and "overreaching" are clearly expressions of opinion as they reflect a criticism towards Plaintiff's behavior and judgment. These phrases cannot be construed in such a way that would be provably false. *Cf. Chapin* v, 993 F.2d at 1093 (expressing that the word "'hefty' is just too subjective a word to be proved false"). The same is true of Defendant Wiltbank allegedly stating that Plaintiff "royally fucked up the response to 5STARS." Again, this is nearly as quintessential an example of an opinion as one could possibly imagine as it essentially constitutes Defendant Wiltbank stating his belief that Plaintiff responded inadequately or inappropriately to a work situation. The final statement Plaintiff presents—Defendant Wiltbank allegedly stating "I don't think we broke the law a single time with respect to 5STARS"—is, again, a quintessential opinion. Indeed, the statement is explicitly prefaced by the qualifier, "I think."

Plaintiff, clearly, was not pleased with her termination. However, her displeasure does not automatically transform any opinionated criticism into actionable defamation. *See Mann*, 639 F. Supp. 2d at 634 ("[M]ere allegations of unsatisfactory job performance do not generally rise to the level of defamation per se."); *Dragulescu v. Virginia Union Univ.*, 223 F. Supp. 3d 499, 510 (E.D. Va. 2016) ("The statements that Dragulescu spoke 'disparagingly,' had a 'meltdown' or 'temper tantrum,' or did not 'properly contribute to the HBCU mission' are statements that are relative in nature and depend largely upon the speaker's viewpoint." (internal quotation marks omitted)); *id.* (finding that plaintiff did not allege defamation based on criticism as a matter of law because "[w]hether the criticism was inappropriate is a matter of opinion, and accordingly the statement as a whole cannot be subject to evidentiary proof of its truth or falsity"). Plaintiff therefore fails to adequately plead element two of her prima facie case for defamation.

Plaintiff also has not adequately pled element one of her prima facie case, the publication

11

element, because Defendants are entitled to qualified privilege. "Qualified privilege precludes liability for certain potentially defamatory statements. Specifically, the privilege applies to communications between persons on a topic in which they share a common interest or duty." *Sailes v. Richardson*, No. 3:16-CV-00325, 2017 WL 6550389, at *4 (E.D. Va. Dec. 22, 2017); *Wynn v. Wachovia Bank, N.A.*, No. 3:09CV136, 2009 WL 1255464, at *3 (E.D. Va. May 6, 2009). "[W]ithin the context of an employment relationship . . . the allegedly defamatory statement is afforded a qualified privilege because the statement is made between persons on a subject in which the persons have an interest or duty." *See Union of Needletrades v. Jones*, 268 Va. 512, 519 (2004).

If a qualified privilege exists, it may be lost only if "plaintiff proves malice by clear and convincing evidence." *Andrews*, No. 3:07CV447, 2008 WL 2096964, at *12; *see Cashion v. Smith*, 286 Va. 327, 338 (2013) ("Once a qualified privilege has attached to a communication, the plaintiff has the burden to prove that the privilege has been lost or abused, which must be shown by clear and convincing proof." (internal citation omitted)). Vitally, "employment matters are issues in which **the absence of malice is presumed**, [and a] showing of maliciousness must be made affirmatively." *Id.* (citing *Larimore v. Blaylock*, 528 S.E.2d 119, 122 (Va. 2000)) (emphasis added). "The determination of privilege is to be decided by the court." *Andrews*, No. 3:07CV447, 2008 WL 2096964, at *12.

Here, Plaintiff alleges that Mr. Wiltbank made false statements about Plaintiff to ExistX and Galois personnel. (*See* Amend. Compl. ¶ 356; *see id.* ¶¶ 298-306). In other words, Plaintiff alleges that Mr. Wiltbank made these statements *solely internally* between the ExistX's and Galois' respective organizations—i.e., amongst Defendants. Thus, the qualified privilege aptly applies. *See Wynn v. Wachovia Bank, N.A.*, No. 3:09CV136, 2009 WL 1255464, *3 (E.D. Va. May 6, 2009) (finding that a defendant was entitled to qualified privilege where the allegedly

defamatory statements were shared solely between employees, managers, and supervisors of defendant's company).[7] Plaintiff also repeatedly attempts to support her defamation claim through conclusory allegations that Defendants violated the FCA, suggesting that Defendants' criticisms of her were defamatory because Defendants *had* violated the law. However, Plaintiff cannot use her own legal conclusion of unlawfulness to support that actual malice existed. *See id.* ("Repeated assertions that a party acted with malice or with a motive of personal spite is not sufficient; rather, such conclusory language does not state a claim for malice if the facts as alleged cannot support a finding as such."). These statements—allegedly exchanged solely amongst Defendants—are insufficient to meet the publication element.

In sum, the statements Plaintiff identifies are opinions, meaning they are not actionable defamation. Defendants are also entitled to qualified privilege, which Plaintiff has not pled actual malice to rebut, meaning she has failed to meet the publication element. As a result, this Court should dismiss Plaintiff's defamation claim as to all Defendants.

### III. Plaintiff's *Bowman* Claim (Count VI) Should be Dismissed as to All Defendants Because the Statutory Framework Plaintiff Cites Cannot Support a *Bowman* Claim

Plaintiff also alleges that she was wrongfully terminated, in violation of public policy. (Amend. Compl. ¶¶ 363-73). In *Bowman v. State Bank of Keysville*, 229 Va. 534 (1985), the Supreme Court of Virginia recognized an exception to Virginia's employment at-will doctrine and created a cause of action for an employee whose termination violates Virginia public policy. *Rowan v. Tractor Supply Co.*, 263 Va. 209, 211 (2002). Since then, "[t]he Supreme Court of Virginia has recognized three situations in which a litigant may show her discharge violated public policy: (1) where an employer fired an employee for exercising a statutorily created right; (2) when

---

[7] Plaintiff summarily alleges that "Defendant Wiltbank has continued to make defamatory comments about Plaintiff to others in the federal contracting community"; however, she makes no effort whatsoever to support this legal conclusion. (Amend. Compl. ¶ 357).

the public policy is explicitly expressed in the statute and the employee was clearly a member of that class of persons directly entitled to the protection enunciated by the public policy; and (3) where the discharge was based on the employee's refusal to engage in a criminal act." *Carmack v. Virginia*, No. 1:18-CV-00031, 2019 WL 1510333, at *9 (W.D. Va. Apr. 5, 2019) (citing *Rowan*, 263 Va. at 214).

To adequately plead a *Bowman* claim, a plaintiff must allege which public policies her termination purportedly violated. Here, Plaintiff alleges that she was terminated contrary to Virginia's "policy favoring honesty, fairness, impartiality, and avoidance of impropriety in public procurement, as expressed in the Virginia Public Procurement Act [(VPPA)], Va. Code § 2.2-4300 et seq., which provides that public procurement should be conducted in a fair and impartial manner with avoidance of impropriety or the appearance of impropriety."[8] (Amend. Compl. ¶ 365).

However, no court has ever held that the VPPA permits a cause of action under *Bowman*. Just last month, the Fourth Circuit revisited the pervasive legal fallacy that every Virginia statute permits a *Bowman* claim, which is seemingly what Plaintiff suggests here. In rejecting a plaintiff's reliance on Virginia regulations for her *Bowman* claim, the Fourth Circuit explained:

> No doubt, that regulation—like virtually every statute—expresses a public policy of some sort. But as Virginia's highest court has explained, not every termination of an employee that arguably violates the policy underlying a statute (much less a regulation) gives rise to a common law cause of action for wrongful discharge. Instead, the *Bowman* doctrine is a narrow exception to the Commonwealth's normal rules and plaintiffs bringing such a claim must identify a Virginia *statute* expressly establishing a public policy they claim was violated.

---

[8] It bears mentioning that Plaintiff initially pursued her *Bowman* claim under a host of other statutes. (*See* Compl. (ECF No. 2) at ¶ 323). Defendants argued in their initial motion to dismiss that none of Plaintiff's alleged bases were appropriate for a *Bowman* claim, after which Plaintiff pivoted completely to solely alleging a *Bowman* claim based on the supposed policy in the VPPA. (*See* D's Mot. to Dismiss (ECF No. 23) at 7-9; P's Opp. to D's Mot. to Dismiss (ECF No. 26) at 8-9; D's Reply Br. (ECF No. 28) at 4-6). This post hoc justification for her *Bowman* claim certainly raises an eyebrow as to the viability of such a claim.

*Mirshahi v. Patient First Richmond Medical Group*, LLC, No. 25-1720, 2026 WL 1480914, at *2 (4th Cir. May 27, 2026) (internal quotation marks, citations, and brackets omitted).

This Court has expressed the same and noted its increasing skepticism to apply *Bowman* and read a vague public policy right of action into every conceivable state law. *See, e.g.*, *Williams v. Virginia, State Bd. of Elections*, No. 3:11CV863-HEH, 2012 WL 2878579, at *8 (E.D. Va. July 13, 2012) ("In considering post-*Bowman* cases, the Virginia courts have consistently construed this exception very narrowly."); *see also John C. Holland Enters., Inc. v. J.P. Mascaro & Sons, Inc.*, 653 F. Supp. 1242, 1247 (E.D. Va. 1987) (disallowing a cause of action because the VPPA did not expressly permit it, and stating "this Court feels that Virginia would not permit this cause of action to go forward, absent a clear statutory or judicial mandate")*, aff'd*, 829 F.2d 1120 (4th Cir. 1987).

Plaintiff's request for *Bowman* liability would also be at odds with numerous decisions from this Court that have held that a *Bowman* claim is not viable if a statute already contains a remedial structure for the alleged grievance. *See Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 553 (E.D. Va. 2022) ("Plaintiff cannot proceed with a *Bowman* claim because the VHRA provides its own remedial scheme and contemplates employees bringing a cause of action based on age and/or disability discrimination under the statute. Virginia courts have regularly held that when a statute creates a right and provides a remedy for the vindication of that right, ***then that remedy is exclusive unless the statute says otherwise***." (emphasis added)); *Mirshahi v. Patient First Richmond Med. Grp., LLC*, No. 3:23CV495, 2024 WL 3823991, *8 (E.D. Va. Aug. 13, 2024) ("Because the VWPA creates a cause of action and provides its own remedy, it cannot support a common law *Bowman* claim."); *see id.* ("[N]umerous Virginia courts have found that statutes containing their own remedy cannot also support a *Bowman* claim." (quotation marks omitted)).

Here, Plaintiff alleges that Defendants violated *Bowman* for the exact same reasons Plaintiff believes Defendants violated the FCA and Va. Code § 40.1-27.3 (i.e., Counts I and II). (*Compare* Amend. Compl. ¶¶ 313-34, *with id.* ¶¶ 363-73). For instance, she alleges that she reported her concerns about obtaining an IP license but was retaliated against in support of her claim under Va. Code § 40.1-27.3 (*id.* ¶ 328), then alleges the exact same conduct in support of her *Bowman* claim (*see id.* ¶ 367).

Finally, Plaintiff cites vaguely to the *entire* VPPA, which is made up of dozens of independent code sections, rather than identifying a specific statute that Defendants purportedly violated. (*See id.* at ¶ 365). Plaintiff cannot, however, push the responsibility to search for an appropriate basis for her *Bowman* claim unto to Court and unto Defendants; instead, she must actually identify where the alleged basis for her *Bowman* claim lies.

Plaintiff's allegations make clear that she is improperly shoehorning her FCA and Va. Code § 40.1-27.3 claims into a *Bowman* vehicle. Plaintiff also fails to identify the basis of her *Bowman* claim. As a result, this Court should dismiss Count VI with prejudice as to all Defendants.

**IV. Plaintiff's Claims Under the False Claims Act (Count I), the Virginia Whistleblower Protection Act (Count II), for Breach of Contract (Count IV), and under Title VII (Counts VII to IX) Should be Dismissed as to Defendant Wiltbank Specifically**

In her Amended Complaint, Plaintiff appears to allege all Counts as to all Defendants. Because some of those Counts do not state a claim as a matter of law with respect to Defendant Wiltbank, Defendants move to dismiss those claims here.

**a. Plaintiff's Claims under the FCA, the VWPA, and Title VII Should be Dismissed as to Defendant Wiltbank Because None of those Statutes Support Individual Liability**

**i. False Claims Act**

Plaintiff brings suit under the FCA's anti-retaliation policy in 31 U.S.C. § 3730(h).

(Amend. Compl. ¶¶ 313-24). However, numerous courts have held that § 3730(h) does not impose liability on individuals. *See, e.g.*, *United States ex rel. Strubbe v. Crawford Cnty. Mem'l Hosp.*, 915 F.3d 1158, 1167 (8th Cir. 2019) ("[N]umerous courts . . . hold that the FCA does not create individual liability."); *Howell v. Town of Ball*, 827 F.3d 515, 529-30 (5th Cir. 2016) (holding that retaliatory termination under § 3730(h) does not apply to individuals). In *Howell*, the Fifth Circuit expressly acknowledges that, although the FCA removed the word "employer," Congress did not intend to impose individual liability through that removal. *Id.* at 529-30; *see Strubbe*, 915 F.3d at 1167 (explaining the same).

The Eastern District of Virginia has likewise held that there is no individual liability under § 3730(h). In *Brach v. Conflict Kinetics Corp.*, this Court explicitly stated: "the text of § 3730(h), read as a whole, forecloses the argument that a supervisor may be sued in his individual capacity." 221 F. Supp. 3d 743, 749 (E.D. Va. 2016). In *Irving v. PAE Gov't Servs., Inc.*, this Court provided a lengthy explanation and analysis of FCA retaliation and likewise concluded that § 3730(h) does not allow for individual liability. 249 F. Supp. 3d 826, 833 (E.D. Va. 2017) (finding the Fifth Circuit's decision in *Howell* "particularly instructive"). As this Court's decision in *Irving* made clear: "[T]he FCA, both before and after the 2009 Amendment, precludes individual liability for corporate employees, and therefore, plaintiff's FCA claims against [four individual] defendants . . . ***fail as a matter of law and must be dismissed***." *Id.* at 835 (emphasis added). Because numerous courts provide that there is no individual liability under § 3730(h), including this Court, the Court should dismiss Count I of Plaintiff's Amended Complaint as to Defendant Wiltbank.

ii.  Virginia Whistleblower Protection Act

The VWPA likewise does not support individual liability. Under the VWPA: "An ***employer*** shall not discharge, discipline, threaten, discriminate against, or penalize an employee, or take

other retaliatory action regarding an employee's compensation, terms, conditions, location, or privileges of employment, because the employee . . . reports a violation of any federal or state law or regulation to a supervisor or to any governmental body or law-enforcement official." Va. Code Ann. § 40.1-27.3(A)(1) (emphasis added). "To bring a claim under the VWPA, a plaintiff must allege facts that demonstrate (1) [she] made a good faith report of a federal or state violation to a supervisor, (2) was discharged by [her] employer, and (3) [her] report was the 'but for' cause of her discharge." *Unger v. Carter*, No. 5:25-CV-00029, 2025 WL 2484198, at *13 (W.D. Va. Aug. 28, 2025) (quotation marks omitted).

The VWPA does not define the term "employer"; however, this Court and Virginia state courts have explained that the definition of "employer" in Va. Code Ann. § 40.1-2 applies to Va. Code Ann. § 40.1-27.3. *See Jordan v. Sch. Bd. of City of Norfolk*, 640 F. Supp. 3d 431, 451-52 (E.D. Va. 2022); *Moschetti v. Off. of the Inspector Gen.*, No. 3:22-CV-24–HEH, 2022 WL 3329926, at *10 (E.D. Va. Aug. 11, 2022); *see also Harris v. Washington & Lee Univ.*, 82 Va. App. 175, 193 (2024). In turn, Va. Code Ann. § 40.1-2 defines "employer" as "an individual, partnership, association, corporation, legal representative, receiver, trustee, or trustee in bankruptcy doing business in or operating within this Commonwealth ***who employs another*** to work for wages, salaries, or on commission and shall include any similar entity acting directly or indirectly in the interest of an employer in relation to an employee." Va. Code Ann. § 40.1-2 (emphasis added).

Here, although Plaintiff alleges that Defendant Wiltbank exercised some degree of control over Plaintiff while she worked at ExistX, he did not *employ* Plaintiff. Indeed, nowhere in Plaintiff's Amended Complaint does she allege that Defendant Wiltbank—in his individual capacity—was Plaintiff's employer. To the contrary, Plaintiff is clear that ExistX was her

employer. (*See id.* Amend. Compl. 8 ("Plaintiff is a woman over the age of 18, who was employed as the CEO of ExistX from September 11, 2023, until her unlawful termination on March 31, 2025.")); *id.* ¶ 11 (describing Defendant Wiltbank as Chairman of ExistX's board and the CEO and a board member of Galois, but not as Plaintiff's employer).[9] Because the VWPA only permits liability against "employers" and Defendant Wiltbank did not employ Plaintiff, her VWPA claim against Defendant Wiltbank fails as a matter of law. *See Moschetti*, No. 3:22-CV-24–HEH, 2022 WL 3329926, at *10 (dismissing VWPA claim against an individual defendant because, although the individual "supervised [the plaintiff] at [her employer], he did not *employ* her within the meaning of the [VWPA]"). Thus, the Court should dismiss Count II of Plaintiff's Amended Complaint as to Defendant Wiltbank.

### iii.    Title VII

Plaintiff's Title VII claims are likewise barred as a matter of law as to Defendant Wiltbank. The Fourth Circuit has explicitly held that "[e]mployees are not liable in their individual capacities for Title VII violations." *Lissau v. S. Food Serv., Inc.*, 159 F.3d 177, 178 (4th Cir. 1998). In turn, this Court has repeatedly acknowledged that Title VII does not provide for individual liability. *See, e.g., Howard v. Glasser & Glasser, P.LC.*, No. 2:25-CV-728, 2026 WL 624483, at *3 (E.D. Va. Mar. 5, 2026) ("Title VII does not recognize individual liability."); *Jones v. Virginia Commonwealth Univ. Health Sys.*, No. 3:21CV730-HEH, 2022 WL 696468, at *3 (E.D. Va. Mar. 8, 2022) ("Time and time again, courts within the Fourth Circuit have held that supervisors and individual employees are not liable under Title VII, and thus, have dismissed those defendants

---

[9] At times, Plaintiff alleges that Galois and ExistX were joint employers. That said, Plaintiff's allegations are clear that she was employed as CEO by ExistX (Amend. Compl. ¶ 8), that ExistX offered her the position (*id.* ¶ 34), that the ExistX board terminated her (*id.* ¶ 281), and that Galois was a "sister company" (*id.* ¶ 10, 48). Defendants are confident that discovery will further undercut any suggestions of joint employment.

from lawsuits."). Because Plaintiff's Title VII claims are clearly foreclosed against Defendant Wiltbank, the Court should dismiss Counts VII, VIII, and IX as to Defendant Wiltbank.

**b. Plaintiff's Claims for Breach of Contract Should be Dismissed as to Defendant Wiltbank Because He Was Not a Party to that Contract.**

In Virginia, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Shuler v. Partner JD*, No. 3:15CVL70-HEH, 2015 WL 5020898, at *4 (E.D. Va. Aug. 20, 2015) (quoting *Filak v. George*, 267 Va. 612, 619 (2004)). "[T]he plaintiff must allege facts setting forth the injury or damage incurred **as a result of defendant's breach**." *Ramos v. Wells Fargo Bank, NA*, 289 Va. 321, 770 S.E.2d 491 (2015) (emphasis added). "The existence of a legally enforceable obligation is a question of law, not fact." *Shuler*, No. 3:15CVL70-HEH, 2015 WL 5020898, at *4.

As described above, Plaintiff is clear that she was hired and employed by ExistX. (Amend. Compl. ¶ 8). Indeed, Plaintiff plainly alleges: "ExistX, Inc. tendered a formal offer of employment to Plaintiff." (*Id.* ¶ 34). The offer letter itself likewise confirms that Mr. Wiltbank, as the chairman of ExistX, was extending an employment offer to Plaintiff <u>on behalf of ExistX</u>. Even assuming *in arguendo* that the offer letter is a contract, there is no sensible interpretation of the offer letter that would suggest that Mr. Wiltbank signed the offer letter in his personal capacity and that, by signing, he would be personally liable under it. It is entirely implausible, even at the motion to dismiss stage, to conclude that Mr. Wiltbank, as an individual, had a legal duty under the offer letter to personally provide Plaintiff's salary, personally provide her with shares of ExistX stock, personally provide for her dental and vision insurance, or that he would personally contribute to her 401k, all of which are described in the offer letter. (*See* Exhibit A at 1-2). Instead, if such a breach of contract claim exists at all, the proper defendant for that claim would be ExistX,

20

Plaintiff's actual and admitted employer, rather than Mr. Wiltbank. *See Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (explaining that, when reviewing whether a complaint states a plausible claim, "the reviewing court [should] draw on its judicial experience and common sense" (quotation marks omitted)).

Mr. Wiltbank is not the proper defendant for this claim because he was not a party to the alleged contract. Thus, Plaintiff fails to state a claim upon which relief can be granted, and this Court should dismiss Count IV as to Mr. Wiltbank.

## CONCLUSION

WHEREFORE, ExistX, Inc., Galois, Inc., and Robert Wiltbank respectfully request that the Court grant Defendants' Rule 12(b)(6) Partial Motion to Dismiss Plaintiff's Amended Complaint and that the Court enter an Order:

i.  dismissing Plaintiff's Equal Pay Act claim (Count III), defamation claim (Count V), and wrongful termination/*Bowman* claim (Count VI) as to all Defendants;

ii. dismissing Plaintiff's False Claims Act claim (Count I), Virginia Whistleblower Protection Act claim (Count II), breach of contract claim (Count IV), and Title VII claims (Counts VII, VIII, and IX), as to Defendant Wiltbank specifically; and

iii. granting any such further relief as the Court deems proper.

Dated: June 23, 2026

Respectfully submitted,
**EXISTX, INC.,**
**GALOIS, INC.,** and
**ROBERT WILTBANK**

*/s/ Amy M. Pocklington*
Amy M. Pocklington (VSB No. 45233)
amy.pocklington@ogletreedeakins.com
Sebastian L. Brana (VSB No. 95703)
sebastian.brana@ogletreedeakins.com
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, PC

901 East Byrd Street, Suite 1300
Richmond, VA  23219
Tel.: (804) 663-2349
Fax: (804) 225-8641

*Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of June, 2026, I electronically filed the foregoing with the clerk of the court using the CM/ECF system, which will send notification of same to counsel for Plaintiff:

Pamela Michelle Keith
pamkeith@centerforemploymentjustice.com
Ray Keith Gordineer, Jr.
raygordineer@centerforemploymentjustice.com
CENTER FOR EMPLOYMENT JUSTICE, LLC
650 Massachusetts Ave. NW, Suite 600
Washington, DC 20001
202-800-0292

Thomas J. Curcio (VSB #23016)
CURCIO LAW
700 North Fairfax Street, Suite 505
Alexandria, Virginia 22314
tcurcio@curciolaw.com
703-836-3366

*Counsel for Plaintiff*

/s/ *Amy Pocklington*
*Counsel for Defendants*